UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| HILBILL PROPERTIES, LLC, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> SENECA SPECIALTY INSURANCE CO. ) <br> **Serve**: ) <br> **Douglas Libby, CEO** ) <br> **Seneca Specialty Insurance Company** ) <br> **160 Water Street** ) <br> **New York, NY 10038** ) <br> ) <br> AMERICAN INTERNATIONAL GROUP, INC. ) <br> **General Counsel** ) <br> **Legal Department** ) <br> **American International Group, Inc.** ) <br> **175 Water Street** ) <br> **New York, NY 10038** ) <br> ) <br> LEXINGTON INSURANCE COMPANY ) <br> **Serve**: ) <br> **General Counsel** ) <br> **Legal Department** ) <br> **Lexington Insurance Company** ) <br> **100 Sumner Street** ) <br> **Boston Massachusetts, 02110** ) <br> ) <br> *Defendants*. ) | Case No. _____ |

**COMPLAINT FOR BREACH OF INSURANCE POLICIES AND
<u>VEXATIOUS REFUSAL TO PAY INSURANCE CLAIM</u>**

COMES NOW, Plaintiff, Hillbill Properties, LLC ("***Plaintiff***" or "***HilBill***")[1] by and through its undersigned attorneys, and as and for its Complaint for Breach of Insurance Policies and Vexatious Refusal to Pay Insurance Claim against Defendants, Seneca Specialty Insurance Company, American International Group, Inc. and Lexington Insurance Company(collectively, the "***Insurers***"), states to the Court as follows:

---
[1] HilBill was formerly known as AWG Properties and did business as HilBill.

**Parties and Jurisdiction**

1. Plaintiff, is, and all relevant times hereto was, a Missouri Limited Liability Company in good standing possessing the capacity to bring suit.

2. Defendant, Seneca Specialty Insurance Company ("*Seneca*") is, and all relevant times hereto was, a foreign insurance company with its home office located in Phoenix, Arizona and its administrative office located in New York City, New York.

3. At all relevant times hereto, Seneca conducted business in the State of Missouri by, among other things, issuing and/or underwriting policies of insurance for real property located in Missouri.

4. Defendant, American International Group, Inc. ("*AIG*") is, and all relevant times hereto was, a foreign corporation conducting business in the State of Missouri by, among other things, issuing and/or underwriting policies of insurance for real property located in Missouri, and possessing the capacity to be sued.

5. AIG holds Lexington Insurance Company out to the public as being an affiliated company for purposes of its insurance business. See *Exhibit A* attached hereto and incorporated herein by reference as if fully set forth.

6. Defendant, Lexington Insurance Company ("*Lexington*") is, and at all relevant times hereto, represented itself as an "*AIG Company*" with its main administrative office located in Boston, Massachusetts and possessing the capacity to be sued. See *Exhibit B* attached hereto and incorporated herein by reference as if fully set forth.

7. At all relevant times hereto, Lexington, for and on behalf of itself and/or AIG, conducted business in the State of Missouri by, among other things, issuing and/or

underwriting policies of insurance for real property located in Missouri and administering claims made thereon.

8.    While the true nature of the corporate interrelationship between AIG and Lexington (collectively, "*AIG/Lexington*") is presently unknown, representatives and agents of AIG have held themselves out to Plaintiff as being authorized to speak and act for an on behalf of Lexington regarding the insurance claim(s) at issue in this lawsuit.

9.    As of the date of this Complaint, neither Seneca, Lexington nor AIG appear in the Missouri Secretary of State's records.  See *Exhibits C*, *D* and *E* attached hereto and incorporated herein by reference as if fully set forth.

10.   This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states.

11.   Venue is proper under 28 U.S.C. § 1391(a)(2), in that a substantial part of the events and omissions giving rise to this claim occurred within this jurisdiction and because the real property that is the subject of the insurance policies at issue, and that is owned by the Plaintiff, is located in the City of St. Louis.

## Allegations Common to All Counts

*The Property and the Insured Damage*

4.    At all relevant times hereto, Plaintiff is and was the owner of certain commercial warehouse and office property located in the City of St. Louis and commonly known and numbered as 7140 North Broadway, St. Louis, MO 63147 (the "*Property*").

5.    Plaintiff has, and all times relevant hereto had, an insurable interest in the Property.

6. At all relevant times hereto, the Property was insured by Seneca or AIG/Lexington against physical damage, loss, destruction and other like circumstances including, but not limited to damage from hail storms (the "***Insured Damage***").

7. For the period from July 30, 2011 through July 1, 2012, the Property was insured by AIG/Lexington (the "***AIG/Lexington Policy Period***"). See ***Exhibit F*** (the AIG/Lexington Policy of Insurance) attached hereto and incorporated herein by reference as if fully set forth.

8. Thereafter, for the period from October 10, 2012 through the date of the Notice of Non-Renewal on 10-10-15, the Property was insured by Seneca (the "***Seneca Policy Period***"). See ***Exhibit G*** (the Seneca Policy of Insurance) attached hereto and incorporated herein by reference as if fully set forth.

9. On or about the first week of April, 2014, and during the term of the Seneca Policy, the St. Louis area was hit by a substantial weather system that included documented hail in excess of 1.5" in diameter.

10. Following that storm, the Property began suffering substantial increased water intrusion through the roof surface and flowing into the warehouse facility.

11. Upon inspection of the roof, it was apparent that there had been substantial hail damage that was not only evident on the roof surface, but also the metal flashings, vent hoods and vent covers as well. See the photographs collectively attached hereto as ***Exhibit H*** attached hereto and incorporated herein by reference.

***The Insurance Claims***

12. On or about April 29, 2014, Plaintiff submitted a claim to Seneca for the Insured Damage under the Seneca Policy (the "*Seneca Claim*"). See *Exhibit I* attached hereto and incorporated herein by reference as if fully set forth.

13. On or about May 6, 2014, Seneca acknowledged receipt of the Seneca Claim pursuant to its standard reservation of rights letter and informed Plaintiff that it would be sending a field adjuster to review the roof. See *Exhibit J* attached hereto and incorporated herein by reference as if fully set forth.

14. Thereafter, on or about August 15, 2014, Seneca admitted that the Seneca Policy covered the Insured Damage but denied the Seneca Claim, alleging that the roof had not sustained any hail damage whatsoever—but had instead been damaged by "*wind*". See *Exhibit K* attached hereto and incorporated herein by reference as if fully set forth

15. Seneca further claimed that the amount of the alleged "*wind*" damage was only $17,562.85. As such, and given that the Plaintiff's deductible under the Seneca Policy was $25,000.00, no payment or compensation for the Insured Damage would be forthcoming. Id.

16. Seeing the clear evidence of hail damage and the increased water intrusion, Plaintiff commissioned its own roof inspection—which inspection occurred on August 27, 2014 and September 2, 2014 ("*Plaintiff's Inspection Report*"). See *Exhibit L* attached hereto and incorporated herein by reference as if fully set forth

17. The Plaintiff's Inspection Report revealed what Plaintiff already knew—which was that the roof was old and in varying degrees of disrepair to start with, but that it also suffered significant hail damage, evidenced by "*spatter marks and indentions on*

5

*metal roof appurtenances*" consistent with hail "*at least one inch (1") in diameter*" and "*[i]nward-protruding, rounded indentations with fracture of varying diameters…consistent with hail strikes…in the foam roof coatings…*" Id. at p.2.

18.     The Plaintiff's Inspection Report further noted that some of the visible hail strikes may be from the prior hail storm and were thus older than those suffered during the April, 2014 storm. Id. at p.8.

19.     Following the Plaintiff's Inspection Report, and based on the knowledge and information gained therefrom, Plaintiff also submitted a claim to AIG/Lexington believing that some damage may have occurred during the AIG/Lexington Policy Period (the "***AIG/Lexington Claim***"). See ***Exhibit M*** attached hereto and incorporated herein by reference as if fully set forth.

20.     On January 30, 2015, AIG/Lexington acknowledged receipt of the AIG/Lexington Claim pursuant to one of its standard reservation of rights letters. See ***Exhibit N*** attached hereto and incorporated herein by reference as if fully set forth.

21.     Like Seneca, AIG/Lexington also retained an inspector to review the roof and issue a report—which report was prepared on or about March 9, 2015 (the "***AIG/Lexington Roof Report***"). See ***Exhibit O*** attached hereto and incorporated herein by reference as if fully set forth.

22.     However, rather than conduct an independent inspection designed to come to independent conclusions, AIG/Lexington's inspector first acquired and reviewed a copy of the Seneca Roof Report and acquired information regarding the Insurer's respective coverage dates. Id. at p.5.

6

23. AIG/Lexington's inspector then concluded that no hail related damage had been sustained during the AIG/Lexington Policy Period. Id. at p.9-10.

24. On or about March 20, 2015, AIG/Lexington likewise denied coverage of the Insured Damage. See **Exhibit P** attached hereto and incorporated herein by reference as if fully set forth.

25. However, a review of the storm data contained in the AIG/Lexington Roof Report concedes that a hail storm with confirmed hail measuring 1.4" in diameter hit the St. Louis Metropolitan area on April 28, 2012, which is during the term of the AIG/Lexington Policy Period. See Exhibit O at p.5.

26. It likewise confirms the April 2, 2014 hail storm with hail in excess of 1.5" in diameter that occurred during the Seneca Policy Period. Id.

27. Thereafter, the Plaintiff engaged the Insurers in numerous discussions in an attempt to negotiate a possible resolution of the Seneca Claim and the AIG/Lexington Claim.

28. The Plaintiff also supplied additional photographs, reports and other information demonstrating the scope and breadth of the Insured Damage.

29. On or about October 13, 2015, and with discussion among the parties going nowhere, counsel for the Plaintiff sent correspondence to Seneca disputing Seneca's position regarding "*wind*". See **Exhibit Q** attached hereto and incorporated herein by reference as if fully set forth.

30. In that correspondence, Plaintiff again sought to resolve the matter without resort to the legal system. Id.

31.     Seneca responded by letter dated October 29, 2015 in which it attempted to shift all liability for the Insured Damage from itself to AIG/Lexington.  See *Exhibit R* attached hereto and incorporated herein by reference as if fully set forth.

32.     Seneca also flatly denied that there was any storm during the Seneca Policy Period—including the April, 2014 storm with documented hail in excess of 1.5" in diameter, which caused any compensable damage to the Property's roof whatsoever. Id.

33.     Despite this blanket denial, Seneca stated that it was "*willing to continue a dialogue with regard to reaching a potential resolution of the claim*" and suggested a conference be held at the Property with Seneca, AIG/Lexington, the Plaintiff and the parties' respective inspectors and counsel.  Id. at p.2.

34.     Plaintiff agreed and the parties met at the Property on December 9, 2015, with the Plaintiff ready, willing and able to resolve the matter that day.

35.     However, rather than engaging in a good faith dialogue designed to resolve and settle the Plaintiff's claims, the Insurers, by and through their counsel and representatives, simply lectured the Plaintiff and presented argument as to their respective lack of responsibility and liability for any of the Insured Damage.

36.     Thereafter, Plaintiff reached out by telephone and email to restart the dialogue but its efforts were ignored.  See *Exhibit S* attached hereto and incorporated herein by reference as if fully set forth.

37.     Finally, on March 4, 2016, Seneca issued its final denial and this lawsuit followed.  See *Exhibit T* attached hereto and incorporated herein by reference as if fully set forth.

## COUNT I - BREACH OF INSURANCE CONTRACT (SENECA)

38. Plaintiff restates and realleges Paragraphs 1 through 37 above as if fully set forth herein and further states and alleges as follows:

39. Plaintiff is, and all relevant times was, the owner of the Property that is the subject of the Seneca Policy.

40. The Seneca Policy provided coverage against physical loss or damage up to the three million dollar ($3,000,000.00) policy limit, which damage includes damage resulting from hail.

41. All premiums due and called for under the Seneca Policy have been paid and said policy was in full force and effect until it was cancelled by Seneca pursuant to its Notice of Non-Renewal on October 10, 2015.

42. During the time of the Seneca Policy Period, the Property suffered damage as a direct result of at least one storm that hit the St. Louis Metropolitan area with documented hail in excess of 1.5" in diameter.

43. Plaintiff timely notified Seneca of the Insured Damage to the Property as a result of the storm.

44. Despite having admitted that the Seneca Policy covers the Insured Damage, Seneca has refused to make any payment whatsoever towards the repair or replacement of the Property's roof or other damaged roof-top equipment.

45. By so refusing, Seneca has breached the terms of the Seneca Policy and the Plaintiff has suffered damages as a result.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court issue its Order and Judgment in favor of Plaintiff and against Seneca in an amount to be proven at trial,

but in no event less than Seventy-Five Thousand Dollars and 00/00 ($75,000.00), for pre and post judgment interest thereon until paid in full, for all of Plaintiff's costs, expenses and attorneys' fees incurred herein, and for such other and further relief as this Court deems just and proper.

### COUNT II - VEXATIOUS REFUSAL (SENECA)

46. Plaintiff restates and realleges Paragraphs 1 through 45 above as if fully set forth herein and further states and alleges as follows:

47. From October 10, 2012 through October 10, 2015, the Property was insured pursuant to terms of the Seneca Policy—which terms provided coverage against physical loss or damage to the Plaintiff's Property, including that resulting from hail, up to the three million dollar ($3,000,000.00) policy limit.

48. Plaintiff suffered hail damage during the Seneca Policy Period and has made a claim for hail damage to the roof of the Property, which claim has been denied.

49. Plaintiff also made demand for payment more than thirty (30) days prior to filing the instant Complaint in an amount that is well under the policy limit, which demand has been refused.

50. Seneca has not only failed and refused to pay the amount demanded, it has also failed and refused to pay <u>any</u> amount for the Insured Damage, claiming instead that there were <u>no storms whatsoever</u> during the Seneca Policy Period which caused any compensable hail damage to the Property's roof, even though the irrefutable data demonstrates that the April, 2014 storm that hit the Property contained documented hail in excess of 1.5" in diameter.

51. Seneca's position regarding the absence of storms during the Seneca Policy Period in the face contrary data, and its refusal to compensate Plaintiff in any manner for the observable hail damage to the Property is and was unreasonable under the circumstances.

52. Seneca has also demonstrated a vexatious and recalcitrant attitude towards the Plaintiff as evidenced by, among other things, calling for a meeting of the parties under the guise of engaging in "*…a dialogue with regard to reaching a potential resolution of the claim*", only to appear for the meeting, walk the Property and lecture the Plaintiff as to its lack of responsibility and liability for <u>any</u> of the Insured Damage, rather than engage in a good faith dialogue designed to resolve and settle the Plaintiff's claims as had been represented.

53. This vexatious and recalcitrant attitude also appears in emails from Seneca's claim's adjuster demanding immediate responses to proposed meeting dates, confirming dates that were neither selected nor agreed-to by the Plaintiffs and resending prior emails marked "priority" in an attempt to paint the Plaintiff as non-responsive when in fact that was not the case. <u>See</u> the exchanges attached hereto collectively as, ***Exhibit U*** and incorporated herein by reference as if fully set forth

54. Under those circumstances, Mo. Rev. Stat. §§ 375.294 and 375.420 entitle Plaintiff to additional damages in the amount of twenty percent (20%) of the first fifteen hundred dollars ($1,500.00) of the loss, and ten percent (10%) of the amount of the loss in excess of fifteen hundred dollars ($1,500.00) plus an award of Plaintiff's reasonable attorney's fee.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court issue its Order and Judgment in favor of Plaintiff and against Seneca in an amount to be proven at trial, but in no event less than Seventy-Five Thousand Dollars and 00/00 ($75,000.00), for pre and post judgment interest thereon until paid in full, for all of Plaintiff's costs, expenses and attorneys' fees incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT III – BREACH OF INSURANCE CONTRACT (AIG/LEXINGTON)

55. Plaintiff restates and realleges Paragraphs 1 through 37 above as if fully set forth herein and further states and alleges as follows:

56. Plaintiff is, and all relevant times was, the owner of the Property that is the subject of the AIG/Lexington Policy.

57. The AIG/Lexington Policy provided coverage against physical loss or damage up to the ten million dollar ($10,000,000.00) policy limit, which damage includes damage resulting from hail.

58. All premiums due and called for under the AIG/Lexington Policy have been paid and said policy was in full force and effect until July 1, 2012.

59. During the time of the AIG/Lexington Policy Period, the Property is believed to have suffered damage as a direct result of at least one storm that hit the St. Louis Metropolitan area in April of 2012 with documented hail measuring 1.4" in diameter.

60. Plaintiff timely notified AIG/Lexington of the Insured Damage to the Property upon learning thereof from the Plaintiff's Inspection Report.

61. Despite the fact that the AIG/Lexington Policy covers the Property and the Insured Damage, AIG/Lexington has refused to make any payment whatsoever towards the repair or replacement of the Property's roof or other damaged roof-top equipment.

62. By so refusing, AIG/Lexington has breached the terms of the AIG/Lexington Policy and the Plaintiff has suffered damages as a result.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court issue its Order and Judgment in favor of Plaintiff and against AIG/Lexington in an amount to be proven at trial, but in no event less than Seventy-Five Thousand Dollars and 00/00 ($75,000.00), for pre and post judgment interest thereon until paid in full, for all of Plaintiff's costs, expenses and attorneys' fees incurred herein, and for such other and further relief as this Court deems just and proper.

Respectfully Submitted,

SAUERWEIN HEIN P.C.

/s/ John Hein
John Hein, #53182 MO
Grant J. Mabie, #61095 MO
147 N. Meramec Ave., 2nd Floor
St. Louis, Missouri 63105
Telephone:   (314) 863-9100
Facsimile:    (314) 863-9101
Email:         jjh@sauerwein.com
                   gjm@sauerwein.com

*Attorneys for Plaintiff*